UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| CHRISTOPHER HOLDER, | ) |
| Plaintiff, | ) Civil No. 13-38-ART |
| v. | ) |
| STACY M. SAUNDERS, et al., | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Christopher Holder, an inmate at the United States Penitentiary—Big Sandy, alleges that three prison officials violated his constitutional rights by failing to protect him from an attack by a fellow prisoner. R. 1. The defendants are Big Sandy's warden (whom Holder named as John Doe), Terry King (Big Sandy's chief psychologist), and Stacy Saunders (a psychologist on King's staff). *Id.* The thrust of Holder's allegations is that the inmate who assaulted him—A.T.—had a history of racially motivated attacks and was dangerously mentally ill. *Id.* at 1–7. He further claims that Saunders knew as much, because she treated A.T. regularly. R. 30 at 7–8, 12. Nevertheless, Holder says, Saunders decided not to recommend any special procedures for ensuring that A.T. would not harm other prisoners. *Id.* at 13–14. Holder claims that the warden and King negligently supervised Saunders. *Id.* at 5–6.

After the Court ordered the defendants to respond to Holder's complaint, they all moved to dismiss or in the alternative for summary judgment. R. 25. Due to some confusion in the record, the Court will dismiss Big Sandy's current warden, and order service on the

warden who was in charge on the date of the attack. For the reasons explained below, Holder's claim against King is dismissed, and his claim against Saunders survives.

## I.     The Wrong Warden Is Named In The Caption Of This Case.

Holder named "John Doe" in his original complaint, and he listed Doe's title as "Warden" of Big Sandy. R. 1 at 2. The Court therefore ordered service on the current warden of Big Sandy, Robert Farley. R. 6. It is now clear that Holder meant to name the warden of Big Sandy on the date of the attack, May 7, 2012. The warden then was David Berkebile. The Court will therefore dismiss Farley and order service of the complaint upon Berkebile.

## II.    King Is Entitled to Summary Judgment, But Saunders Is Not.

With that procedural hiccup out of the way, the Court can proceed to the merits of the defendants' motion. Holder alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. That right requires prison officials to take reasonable measures to ensure an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Courts often describe claims like Holder's as "failure to protect" claims, because the gist of the complaint is that the defendants failed to protect the plaintiff from another inmate. A failure to protect claim has two elements: (1) that the prisoner was incarcerated under conditions posing an objectively substantial risk of serious harm, and (2) that the defendants acted with "deliberate indifference" to the risk. *Id.* at 834. An official is deliberately indifferent if he is aware of facts from which he could infer that a substantial risk of serious harm exists, and he draws the inference, but does nothing to prevent the harm. *Id.* at 837; *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

As this Court previously explained, Holder adequately pleaded his claims against both King and Saunders. *See* R. 6 at 2–3 (explaining that Holder had alleged plausible claims against the defendants). The Court sees no reason to re-consider its prior order, especially in light of Holder's new detailed pleadings, which the Court would construe as an amended complaint anyway. *See* R. 30. The question at this stage is whether there is a genuine issue of material fact for trial. Because the defendants have moved for summary judgment, the Court must view the evidence in the light most favorable to Holder. *Scott v. Harris*, 550 U.S. 372, 378 (2007). If the evidence, viewed in that light, would permit a finder of fact to return a verdict for Holder, then the Court must deny the motions for summary judgment. *Cordell v. McKinney*, No. 13-4203, 2014 WL 3455556, at *4 (6th Cir. July 16, 2014).

### A. King is Entitled to Summary Judgment.

King is entitled to summary judgment, because no evidence suggests that he personally violated Holder's Eighth Amendment rights. Holder's response to the defendants' motion indicates that his claim against King proceeds on a theory of supervisory liability. R. 30 at 5 ("Warden Farley and Dr. King negligently supervised the decision[s] [and] the actions of Stacy Saunders . . . . Defendants are liable as principals for all torts committed by their agents."). That is, he alleges that King failed to supervise Saunders—not that King personally violated his rights. *Id.* But for Holder to recover from King, he must show that King violated his rights: "Government officials may not be held liable for the unconstitutional conduct of their subordinates on a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Holder suggests in passing that King knowingly acquiesced in Saunders's violation of his rights, R. 30 at 7, which could render King liable to him. *See Grinter v. Knight*, 532 F.3d

567, 575 (6th Cir. 2008). But Holder points to no evidence tending to prove it. R. 30 at 7. He merely notes that King met with A.T. once upon A.T.'s arrival at Big Sandy. *Id.* Holder never explains how that meeting could implicate King in Saunders's subsequent actions. *Id.* King is therefore entitled to summary judgment.

**B. Holder's Claim Against Saunders Survives Summary Judgment.**

Because the fate of Holder's claim turns in large part on what Saunders knew and did, a brief review of the record leading up to the assault is in order. Saunders knew that A.T.—who is black—had a history of racially motivated violence. R. 27-1 at 1 (describing a previous "violent assault" that may have been related to "racial issues"). She further knew that this history was related to A.T.'s unstable mental condition: A.T. believed himself to be possessed of "special abilities" that allowed him to detect and "pre-emptively strike out" against those who might harm him. R. 27-1 at 3. The powers, he believes, were "allotted to him by God due to the suffering of his African American ancestors." R. 30-2 at 2. A.T. resented his treatment by previous white psychologists, who evidently had relegated him to the Special Housing Unit for four years. R. 27-1 at 3, 4. Contrary to their evaluations, A.T. claimed he was not "explosive," because he resorted to violence only after he had "gathered sufficient information from the voices and his special sensing ability." *Id.* at 4. Perhaps most damningly, A.T. indicated that he was not about to start playing nice with others. He warned Saunders that guards were trying to "double-cell" him,[1] and that he would respond to the first threat he perceived with "maximum force and velocity." *Id.* at 12. All of those facts come straight from Saunders's own notes. *See* R. 27-1 at 2–22.

---

[1] A jury could understand the term "double-cell" to mean "house with another inmate."

By the time of the assault, Saunders also knew that A.T.'s mental health was worsening. R. 27-1 at 13. Three months before the attack, Saunders revised her assessment regarding the severity of A.T.'s mental illness upward, because of "psychotic symptoms consistent with a diagnosis of Schizophrenia." *Id.* To make matters worse, A.T. then stopped attending his appointments. *Id.* at 19–20. Saunders's next conversation with A.T. occurred after the attack on Holder. *Id.* at 21. In the interim, Saunders did nothing. For the reasons explained below—viewing those facts most favorably to Holder—a jury could find in Holder's favor.

**1. A Jury Could Conclude That Holder Was Imprisoned Under Conditions That Posed an Objectively Substantial Risk of Serious Harm.**

First, a jury could find that Holder—who is white—was housed in conditions posing a substantial risk of serious harm, because A.T. evidently had unrestricted access to him on the day of the assault. R. 30-1 at 1. In light of A.T.'s history of racial violence and his severe mental health problems, a jury reasonably could conclude that he posed a substantial threat to white inmates to whom he had easy access. *See Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) (holding that a white inmate faced a substantial threat of serious harm from a black inmate who had a history of racial assaults).

**2. A Jury Could Conclude That Saunders Was Deliberately Indifferent To Holder's Plight.**

The jury could also find that Saunders was deliberately indifferent to the risk. Saunders was certainly aware of plenty of facts (discussed above) from which she could have inferred that A.T. should not have been allowed near other inmates, particularly white ones. And there is enough evidence to create a factual question about whether she drew the

5

required inference—that is, that A.T. posed a substantial risk of serious harm to white inmates.

The defendants have simply ignored the portions of the record that do not support their position, so it is impossible for the Court to know precisely what to make of Saunders's revision of her diagnosis. *See* R. 30-2 at 2. The note documenting the revision reads as follows:

> [A.T.] has been upgraded to Care 2-mh based on his presentation of psychotic symptoms consistent with a diagnosis of Schizophrenia. His presentation often consists of marked agitation and he refuses to take medication due to his belief that he is not mentally ill and that his symptoms are "special powers" allotted to him by God due to the suffering of his African American ancestors. *Due to his presentation and history of violence, he will be seen monthly in the department*.

*Id.* (emphasis added).

Viewing Saunders's file, that note, and Saunders's subsequent inaction in the light most favorable to Holder, a reasonable finder of fact could see things his way. Saunders appreciated that all was not well with A.T. Otherwise, there would have been no need to revise his mental health status. The note advises that A.T. "will be seen monthly" in light of his mental illness and his history of violence. The note thus recognizes that a mentally ill man with a history of violence requires some form of treatment. But when Holder stopped going to his appointments—when the preventive measures Saunders prescribed stopped—Saunders did nothing. If, in her view, monthly check-ups were required in March, then why did she do nothing when Holder stopped showing up? Perhaps she changed her opinion (without documenting it in the record), but the jury might also find that she perceived the same risk (as the record suggests) and inexplicably failed to take any action. A jury could

6

therefore conclude that Saunders was deliberately indifferent to a threat that she had recognized.

Finally, qualified immunity does not relieve Saunders of liability. The Sixth Circuit has defined the right to be free from an assault by another prisoner at a high level of generality, and it has held that the right is clearly established. *See, e.g.*, *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (explaining that the right to be free from assaults by other prisoners is clearly established). Because a jury could conclude that Saunders violated Holder's clearly established right by deliberately turning a blind eye to the threat posed by A.T., the Court must deny her motion. *See id.* at 765–66.

Accordingly, it is **ORDERED** that:

(1) The defendants' motion to dismiss or in the alternative for summary judgment, R. 25, is **GRANTED IN PART AND DENIED IN PART** as follows.

   a. Robert Farley's motion for summary judgment is **GRANTED**, and he is **DISMISSED** from this case.

   b. Terry King's motion for summary judgment is **GRANTED**, and he is **DISMISSED** from this case.

   c. Stacy Saunders's motion to dismiss or in the alternative for summary judgment is **DENIED**.

(2) By **Friday, August 22, 2014**, the defendants **SHALL FILE** in the record of this case a document stating David Berkebile's current mailing address, so that the Court can order the United States Marshals Service to serve him with Holder's complaint. If the defendants believe that David Berkebile was not the warden of Big Sandy on the date of the attack, then they should so inform the Court.

(3) The Court will enter a separate order referring this matter to the Magistrate Judge for discovery.

This the 11th day of August, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge