UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| CHRISTOPHER HOLDER,<br><br>    Plaintiff,<br><br>v.<br><br>STACY M. SAUNDERS, et al.,<br><br>    Defendants. | Civil No. 13-38-ART<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

No means no. A former federal prisoner, Christopher Holder,[1] alleges in this lawsuit that two of the prison's psychologists, Stacy Saunders and Terry King, failed to protect him from an attack by a fellow inmate whom the Court will refer to as "A.T." R. 1 at 1–7. The Court's previous orders—and there have been a few of them now—have explained why a reasonable jury could find, given the evidence in the record, that the defendants' actions violated the plaintiff's rights under the Eighth Amendment. *See*, *e.g.*, R. 33; R. 51; R. 83. The defendants have pointed to nothing that convinces the Court that its previous reasoning was incorrect. For that reason, and for those that follow herein, the defendants' new motion for summary judgment is denied.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute of fact is a "genuine" one if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*,

---

[1] Holder was incarcerated at the United State Penitentiary—Big Sandy ("Big Sandy").

477 U.S. 242, 249 (1986).  When determining whether a reasonable jury could return such a verdict, a court must consider the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In their new motion, the defendants argue that they are entitled to summary judgment for three reasons.

I.

First, the defendants argue that there is no genuine dispute as to whether they acted with "deliberate indifference," a necessary component of Holder's failure-to-protect claim.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A plaintiff shows deliberate indifference if he shows three things: first, that a prison official was aware of facts from which she could infer that a substantial risk of harm existed; second, that she in fact drew that inference; and, third, that she did nothing to prevent the resulting harm.  *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).  The official in question need not know "in advance" which "particular prisoner [is] at risk" of suffering the harm.  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).  For the "correct inquiry" is not whether the official "knew who the particular victim [would] turn[] out to be," but rather "whether [an official] had knowledge about the substantial risk of serious harm to a particular class of persons."  *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995).

The Court has already explained why a reasonable jury could find that Saunders and King had such knowledge here.  In one of the Court's previous orders, R. 51, the Court noted that Saunders's "notes contain a litany of facts . . . showing her awareness of information from which she could infer," and did infer, that A.T. presented "a substantial risk of harm . . . to the inmates that he had access to on his housing unit."  *Id.* at 13.  To review those facts

2

once more: Saunders knew that A.T. heard voices; that he had unnecessarily hurt people based on the urging of those voices; that he said he would "repel[] with maximum force and velocity" any threats he perceived; that he had committed assault with a weapon while in prison; that he had a history of weapons possessions while at Big Sandy; that he had psychotic symptoms consistent with schizophrenia; that he was often agitated; and that he refused to take his medications. R. 27-1 at 4, 12, 13, 25. All of this is well-documented in Saunders's own notes. And those notes remain part of the record. Thus, a reasonable jury, after drawing all inferences in Holder's favor, could conclude that Saunders knew that A.T. posed a substantial risk of harm to other inmates on his housing unit, including and especially Holder himself.

The Court has also already explained why a reasonable jury could conclude that Saunders did nothing to prevent that risk of harm from turning into actual harm. *See* R. 51 at 14–15. To review those facts again as well: Saunders scheduled A.T. for monthly visits but did not see him for four months after his last appointment; A.T. missed two appointments but Saunders did not visit his cell or tell other prison officials about his condition; and Saunders scheduled A.T.'s last appointment for 10 to 12 weeks in the future even though he had recently displayed psychotic symptoms, had made threats, and had made clear that he would not take his medication. R. 27-1 at 13, 20.

After drawing all reasonable inferences in Holder's favor, a reasonable jury could find that Saunders was aware of facts from which she could infer that a substantial risk of harm existed, that she in fact drew that inference, and that she did nothing to prevent the resulting harm. *See Curry*, 249 F.3d at 506. Saunders is not entitled to summary judgment.

To survive summary judgment as to King, the prison's chief psychologist, Holder needs to create a genuine issue only as to whether King "at least implicitly authorized, approved, or knowingly acquiesced" in Saunders's conduct. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). And the Court has already explained why Holder has done so. *See* R. 83 at 4–5. Specifically, the prison's psychology-services manual required King "to review and co-sign reports written by any new staff psychologist," which Saunders was, "until such time as the Chief Psychologist feels [the new psychologist] is fully aware of, and responsible for, following Bureau of Prisons guidelines and procedures.[2] R. 68-2 at 2. King acknowledged in his deposition that he "consulted about cases weekly" with Saunders. R. 80 at 2. And Saunders testified in her own deposition that King was aware of her plan to treat A.T. and nevertheless registered no disagreement. R. 80 at 4, 6. A reasonable jury could therefore find that King at least "knowingly acquiesced" in the treatment plan—such as it was—which means King is likewise not entitled to summary judgment on the grounds that Holder failed to create a genuine issue as to deliberate indifference.

The defendants respond in three ways. First, they point out that "[c]laims alleging negligence or medical malpractice fail to meet the standard of deliberate indifference." R. 89-1 at 16 (citing *Reed v. Speck*, 508 F. App'x 415, 420–21 (6th Cir. 2012)). "Throughout the entirety of this matter," the defendants say, "Holder has consistently proffered 'evidence' commensurate with a negligence standard." *Id.* This is simply not true. Holder alleged in his complaint that the defendants' conduct went far beyond mere malpractice, into the realm of deliberate indifference. And the Court has already explained, here and elsewhere, why

---

[2] Saunders began treating A.T. just two months after she started working at Big Sandy. R. 68-1 at 1.

4

Holder has proffered "evidence" sufficient to allow a reasonable jury to find that the defendants' conduct was extreme enough to support an Eighth Amendment claim.

Second, the defendants point to evidence that the Court did not previously have before it, namely the testimony of their paid expert, Robert Denney. In Denney's opinion, Saunders was not "doing nothing" but instead "struggling with understanding the nature of [A.T.'s] diagnosis." R. 19 (citing R. 89-2 at 23). Given this expert testimony, the defendants seem to argue, there is no longer a genuine issue as to whether Saunders and King were deliberately indifferent. Suffice it to say that the jury is at liberty to disbelieve Denney's opinion testimony—every word of it, in fact—and the remaining evidence would allow the jury to find in Holder's favor. Of course, they could accept it as well. That is what trial is for. In short, Denney's expert testimony is not enough to entitle the defendants to summary judgment.

Finally, the defendants attack the conclusions of the plaintiff's own expert, Dr. Robert Morgan, pointing out that he framed his opinions in terms of the proper standard of care rather than in terms of deliberate indifference. Thus, they say, "Dr. Morgan's expert report is insufficient to establish the subjective component [of deliberate indifference]." R. 89-1 at 20 (internal quotations and citations omitted) (alterations in original). Judging from this argument, the defendants seem to believe that they are entitled to summary judgment so long as any individual witness cannot carry the plaintiff's burden of proof all by himself. This is not true, of course. A brick is not a wall, and a party need not prove a material fact with the testimony of one witness alone. The fact that Dr. Morgan nowhere testified that the defendants were deliberately indifferent is not itself a reason to grant summary judgment to the defendants. More to the point, though, there is enough evidence—even without Dr.

Morgan's report and testimony—for a jury to find in Holder's favor. Thus, even if the jury disregarded his testimony in its entirety, there would remain a genuine issue as to whether the defendants were deliberately indifferent. In sum, Dr. Morgan's testimony does not change the summary-judgment calculus in this case.

## II.

The defendants also argue—at least in passing—that they are entitled to summary judgment on the basis of qualified immunity. That argument fails for reasons the Court has already made clear. *See, e.g.*, R. 33 at 7. A defendant is entitled to summary judgment on qualified-immunity grounds only if no reasonable juror could find two things: that "the defendant violated a constitutional right" and that "the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). As shown above, a reasonable juror could indeed find that the defendants violated Holder's Eighth Amendment rights, specifically, the right to "be free from [a prison official's] deliberate indifference to assault." *Id.* That right, as the Sixth Circuit has made clear, is a "clearly established" one. *Id*. The defendants are therefore not entitled to summary judgment based on qualified immunity.

## III.

Finally, the defendants make their only new argument, namely that Holder has failed to show a genuine issue as to whether the defendants' conduct caused his injuries. They point to cases holding that, even if a prison official has been deliberately indifferent to an inmate's safety, if the inmate nevertheless instigates the conflict that leads to his injury, then he is the proximate cause of that injury—not the official. *See* R. 89-1 (citing *Molina v. Smearsal*, Civil No. 3:08-CV-2912, 2011 WL 127158 (N.D. Ohio 2011); *Lemmons v. Durant*, Civil No. 10-CV-3030, 2011 WL 4633104 (C.D. Ill. 2011)).

In support of this argument, the defendants point out that Holder has waffled a bit in his account of the altercation with A.T.  At times, he has stated that A.T. attacked him "out of the clear blue" and without any provocation.  R. 30-1 at ¶ 1.  At other times, he suggested instead that some time elapsed between an initial altercation and an ultimate attack.  R. 89-6 at 45–49.  Thus, the defendants say, Holder simply could have walked away: "the ultimate result of the final confrontation between Holder and Taylor could have been avoided," in their view, "by Holder himself."  R. 89-1 at 28.

As an initial matter, these allegedly conflicting bits of testimony show only one thing: that there is indeed a genuine issue as to whether Holder initiated the altercation.  These conflicts hardly show that there is no genuine issue, which is what the defendants need to show to win summary judgment.  Moreover, even in Holder's deposition—the source of the "could-have-walked-away" testimony—Holder said that he went back to talk to A.T. because it was "taboo to talk to the police [guards] about anything [so] we try our best to handle things ourselves."  R. 89-6 at 46.  And at no point did Holder—or anyone else—testify that Holder was the first aggressor.  He has always made clear that A.T. stabbed him before he hit A.T.  In the end, the defendants are free to argue to the jury that Holder initiated the altercation and that Saunders and King were, for that reason, not the proximate cause of his injuries.  But they have failed to show that every reasonable juror would accept that argument.  That means the defendants are not entitled to summary judgment on the grounds that Holder has failed to create a genuine issue as to proximate cause.

Accordingly, it is **ORDERED** that Saunders's motion to dismiss, or in the alternative, motion for summary judgment, R. 89, is **DENIED**.

This the 4th day of November, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge